IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PYROTEK, INC., )<br>d/b/a NECO DIVISION, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>MOTIONMASTER, INC., and )<br>SCOTT E. BOLLAR, )<br>  )<br>Defendants. )<br>_____ ) | 1:04CV00549 |

MEMORANDUM OPINION

TILLEY, Chief Judge

This suit arises from a dispute between Plaintiff Pyrotek, Inc., d/b/a NECO Division ("Pyrotek") and Defendants Motionmaster, Inc. ("Motionmaster") and Scott E. Bollar ("Mr. Bollar") regarding a contract between the parties for the sale of a piece of manufacturing equipment. This matter is currently before the Court on the following matters: (1) Defendants' Motion to Dismiss [Doc. #4], and (2) Plaintiff's Motion for Leave to Conduct Discovery on Jurisdictional Issues [Doc. #15].

I.

Plaintiff Pyrotek is a North Carolina corporation with a place of business in Rowan County, North Carolina. At some time prior to March 13, 2003, Pyrotek entered into negotiations with Motionmaster for the production of a piece of manufacturing equipment (the "Equipment") for Pyrotek's Rowan County facility.

Motionmaster is a closely held California S-corporation that manufactures computer pneumatic machines. Motionmaster's sole office is located in Vista, California. Motionmaster also performs all of its manufacturing work at this location. Mr. Bollar is the president of Motionmaster.

On or about March 12, 2003 Pyrotek placed an order with Motionmaster to provide a particular piece of manufacturing equipment. In the purchase **order, Motionmaster agreed to build the machine at its Vista, California facility and ship it "F.O.B. Vista, California"**[1] upon its completion. The parties also agreed that after the machine was shipped, Mr. Bollar would visit Pyrotek's facility in North Carolina to install the Equipment. The parties were frequently in contact during the manufacturing of the Equipment, including numerous phone calls and e-mails between Pyrotek in North Carolina and Motionmaster in California. Additionally, throughout the negotiation and manufacturing stages, Pyrotek officials visited Motionmaster's facility in California repeatedly to inspect the progress of the Equipment.

On November 6, 2003, the Defendants shipped the Equipment to the Pyrotek facility in Rowan County. **Defendant, specifically Mr. Bollar,** then visited North Carolina, as was anticipated by the purchase order, to install the Equipment.

---

[1] F.O.B. means "free on board" and is a term of delivery. N.C. Gen. Stat. § 25-2-319. "F.O.B. Vista, California" means that delivery of the Equipment took place in California and Pyrotek was then responsible for the risk of its shipment from California to North Carolina. See Id.; Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F.Supp. 345, 346 n.1 (M.D.N.C. 1995).

2

Pursuant to the contract, Pyrotek has paid the Defendants approximately $90,000 for the Equipment.

Pyrotek contends that the Equipment delivered was not complete, did not perform as required by the contract, and that Defendants have failed to repair or fix the Equipment. On June 17, 2004, Pyrotek filed a complaint in this Court against both Motionmaster and Mr. Bollar alleging breach of contract and unfair and deceptive trade practices [Doc. #1]. Pyrotek also alleges that Motionmaster is the "mere alter ego" of Mr. Bollar and therefore the corporate veil should be pierced and Mr. Bollar should be held personally liable for any actions of Motionmaster.

On September 24, 2004, Defendants' filed a Motion to Dismiss [Doc. #4], alleging (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and (2) failure to allege facts sufficient to state a claim for both unfair and deceptive trade practices and corporate veil piercing pursuant to Federal Rule of Civil Procedure 12(b)(6). Pyrotek responded to this motion on November 29, 2004 [Doc. #9]. Defendants filed a reply on February 22, 2005 [Doc. #13].[2]

On April 5, 2005, Pyrotek's new counsel filed a Motion for Leave to Conduct Discovery on Jurisdiction Issues [Doc. #15], requesting permission to conduct discovery on the issue of whether Defendants have sufficient contacts with North Carolina for personal jurisdiction to exist. Defendants opposed this

---

[2] Pursuant to an Order from this Court, this case was stayed for a period of sixty days effective December 9, 2004 due to the withdrawal of Plaintiff's counsel from the practice of law [Doc. #12].

3

motion in their Response filed April 19, 2005 [Doc. #16]. Pyrotek filed its Reply [Doc. #17] on May 2, 2005.

II.

Defendants first request that this action be dismissed for lack of personal jurisdiction over both Motionmaster and Mr. Bollar pursuant to Federal Rule of Civil Procedure 12(b)(2). When such a motion is made, the plaintiff bears the ultimate burden of proof to show that personal jurisdiction is proper as to each defendant by a preponderance of the evidence. Ward v. Wavy Broadcasting, LLC, 2003 WL 715910, at *2 (M.D.N.C. Feb. 25, 2003) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). Whether personal jurisdiction in this Court is proper over Motionmaster will be considered first.

In considering a motion to dismiss for lack of personal jurisdiction, a court may either evaluate the motion on the basis of the pleadings and affidavits, postpone the decision and allow discovery on this issue, or hold an evidentiary hearing. See Rich v. KIS California, Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988); see also Combs v. Bakker, 886 F.2d at 676; Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). When personal jurisdiction is examined only on the basis of motion papers – including affidavits, legal memoranda, and the allegations of the complaint – the plaintiff is required only to make a *prima facie*

showing of personal jurisdiction.³  Combs, 886 F.2d at 676.  In determining whether a *prima facie* showing has been made "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  Id.

Whether personal jurisdiction is proper involves a two-part inquiry.  First, the court must determine whether the state long-arm statute authorizes the exercise of jurisdiction under the circumstances.  Mylan Labs. Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  Second, if authorization under the long-arm statute is found, the court must then consider whether the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution.  Id.

A.

The applicable North Carolina long-arm statute in this case is N.C. Gen. Stat. §1-75.4.  "The provisions of [the North Carolina long-arm] statute are to be given a liberal construction, making available to the North Carolina courts the full

---

³ Defendants contend that the Plaintiff's Complaint in this case should be disregarded because it was initially unverified.  However, "[w]here unverified allegations in the complaint meet plaintiff's initial burden of proving the existence of jurisdiction . . . and defendants do not contradict plaintiff's allegations in their sworn affidavit, such allegations are accepted as true and deemed controlling." North Carolina Mut. Life Ins. Co. v. McKinley Financial Serv., Inc., 386 F. Supp. 2d 648, 654 (M.D.N.C. 2005) (citations omitted).  Here, because the relevant allegations to determining personal jurisdiction are not disputed, Defendants' contention is rejected.

5

jurisdictional powers permissible under federal due process." Ward, 2003 WL 715910, at *2 (citing Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982)). Pyrotek relies on two sections of the North Carolina long-arm statute to support its claim that personal jurisdiction over Motionmaster is proper: specifically, §1-75.4(4)(b) of the North Carolina long-arm statute which provides for *in personam* jurisdiction over a party when "[p]roducts, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within [North Carolina] in the ordinary course of trade," and §1-75.4(5)(c) which provides for *in personam* jurisdiction when a promise is made to the plaintiff by the defendant "to deliver or receive within this state . . . goods, documents of title, or other things of value." N.C. Gen. Stat. §§1-75.4 (4)(b) & (5)(c). It is undisputed that Motionmaster agreed to manufacture the Equipment and then ship it to North Pyrotek for use in its North Carolina based facility. Additionally, Motionmaster received several payments from Pyrotek, totally approximately $90,000, that were drawn from North Carolina bank accounts. See Cherry Bekaert & Holland v. Brown, 394 S.E.2d 651, 654-55 (N.C. Ct. App. 1990) (holding that monies paid to defendant from a North Carolina account were sufficient to fulfill the statutory requirements for long-arm jurisdiction). Because it is clear that Pyrotek has satisfied the first inquiry in support of personal jurisdiction, the inquiry now turns to whether the exercise of personal jurisdiction over Motionmaster satisfies the requirements of the Due Process Clause.

6

B.

The Due Process Clause of the Fourteenth Amendment serves to limit the power of a state to assert *in personam* jurisdiction over a non-resident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 109 S.Ct. 1868 (1984). In order for personal jurisdiction to exist over Motionmaster, "a sufficient connection between defendant and the forum state must be present so as to make it fair to require defense of the action in the forum state." Hiwassee Stables, Inc. v. Cunnigham, 519 S.E.2d 317, 320 (N.C. Ct. App. 1999) (citing Kulko v. California Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690 (1978)). When the sufficiency of a non-resident defendant's contacts are examined, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir. 1994) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174 (1985)).

There are two types of personal jurisdiction: specific and general. Lesnick, 35 F.3d at 945-46; Regent Lighting Corp. v. American Lighting Concept, Inc., 25 F. Supp. 2d 705, 710 (M.D.N.C. 1997). Specific jurisdiction exists when the forum state asserts personal jurisdiction over the defendant in a suit "arising out of or related to" the defendant's purposeful contacts with the state. Helicopteros Nacionales, 466 U.S. at 414-16. For specific jurisdiction to be found, due process requires that the defendant "purposely direct its activities at the forum." Federal

7

Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989). If, on the other hand, the issues before the court did not arise in the forum state, then general jurisdiction exists only when the defendant had sufficient "continuous and systematic contacts" with the forum state. Helicopteros Nacionales, 466 U.S. at 414. Thus general jurisdiction requires "a more demanding standard than is necessary for establishing specific jurisdiction." AIS Scan Inc. v. Digital Services Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

In order for this Court to have specific jurisdiction over Motionmaster, Pyrotek is required to show: (1) the extent that Motionmaster "purposefully availed" itself of the privileges of conducting activities in North Carolina; (2) whether Pyrotek's cause of action arises from Motionmaster's activities purposely directed at North Carolina; and (3) that the exercise of personal jurisdiction would be constitutionally reasonable. Id. Additionally, "a contract with a resident of a forum state does not automatically constitute sufficient contacts to support the exercise of specific jurisdiction, even when the dispute arises from the contract." Burlington Indus., Inc. v. Yanoor Corp., 178 F. Supp. 2d 562, 567 (M.D.N.C. 2001). Rather, the contract must have a substantial connection with the state so that "the nature and quality of a defendant's relationship to the forum 'can in no sense be viewed as random, fortuitous, or attenuated.'" Id. (citing Burger King Corp., 471 U.S. at 474). Pyrotek contends that the negotiation, sale and shipment of the Equipment to its North Carolina facility and the subsequent visit by Mr.

8

Bollar to install the equipment provides the "minimum contacts" with the state of North Carolina for specific jurisdiction to be exercised over Motionmaster.

In the Fourth Circuit a single shipment of goods into a state does not, without more, constitute sufficient contacts for personal jurisdiction to arise. <u>Ajax Realty Corp. v. J.F. Zook, Inc.</u>, 493 F.2d 818, 821 n.4 (4th Cir. 1972). Indeed, in the instant case, Motionmaster's agreement to manufacture the Equipment and send it "F.O.B. Vista, California" is likely not sufficient to give rise to jurisdiction in North Carolina. <u>See, e.g.</u>, <u>Golden Belt Mfg. Co. v. Janler Plastic Mold Corp.</u>, 281 F.Supp. 368 (M.D.N.C. 1967), <u>aff'd</u> 391 F.2d 266 (4th Cir. 1968) (holding that when a contract was initiated by the plaintiff for defendant, a Chicago plastic mold manufacturer, to ship mold to North Carolina, F.O.B. Chicago, personal jurisdiction over the defendant in North Carolina would offend due process); <u>Affinity Memory & Micro., Inc. v. K & Q Enterprises, Inc.</u>, 20 F. Supp. 2d 948, 953 (E.D. Va. 1998) (finding no jurisdiction over an Illinois defendant in Virginia district court when negotiations were initiated by the plaintiff, made over the phone, and the goods were shipped to Virginia, F.O.B. Illinois).

However, in this case, Motionmaster went one step further when it entered into the agreement with Pyrotek. In addition to manufacturing and shipping the Equipment, Motionmaster also agreed in advance to have an employee, the President, Mr. Bollar, come to North Carolina and install the Equipment. Several Fourth Circuit cases suggest that this additional provision in the contract between

9

the parties, supports the imposition of personal jurisdiction over Motionmaster in North Carolina.

For example, in Chung v. NANA Development Corp., 783 F.2d 1124 (4th Cir. 1986), the court stated that "[t]he factors considered in determining whether the defendant purposefully established minimum contacts with the forum include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Id. at **1128 (citing, Burger King, 474 U.S. at 478)**. The Chung court then found there was no constitutional basis for jurisdiction over an Alaskan seller of reindeer horns to a Virginia purchaser when the defendant did everything in its power to confine its activity to Alaska but was unexpectedly forced by the buyer's activity to ship the antlers to Virginia. Id. at 1128-29 ("Predictability in structuring business dealings would otherwise be impaired and fair notice give way to the whims of purchasers, leaving jurisdiction to rest on random, isolated or fortuitous circumstances") (citations omitted); see also Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502, 504 (4th Cir. 1956) (holding the defendant's visit to North Carolina, which was not contemplated in any way in the contract, to discuss the plaintiff's complaint about the product did not expose them to personal jurisdiction in North Carolina).

In this case, the original purchase agreement contemplated more than just the sale of a machine to a company based in North Carolina. Rather, the agreement specified that Motionmaster would manufacture a machine to Pyrotek's

10

specifications and then travel to North Carolina to install the Equipment for use at the Pyrotek facility. This activity distinguishes this case from those involving the mere sale of goods to a party in the forum state. See Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc., 294 F. Supp. 2d 823, 829 (N.D. W.Va. 2003) (finding that because the product at issue was located in West Virginia and the defendant specifically contracted to travel to West Virginia to install the product and train plaintiff's employees on its use and operation, sufficient minimum contacts existed). Given the nature of the agreement between the parties, which contemplates that part of the contract was to be performed in North Carolina, **Motionmaster has** sufficient minimum contacts within this forum so that due process is not violated by the exercise of personal jurisdiction here.

### III.

Pyrotek also contends that because personal jurisdiction over Motionmaster is proper in this case, personal jurisdiction exists over Mr. Bollar as well because he is Motionmaster's alter ego.[4] Personal jurisdiction over Mr. Bollar would be proper if Pyrotek can show that the corporate veil should be pierced through to Mr. Bollar. See DP Envtl. Services, Inc. v. Bertlesen, 834 F.Supp. 162, 165 (M.D.N.C. 1993) (warning that the disregarding the corporate entity and applying the alter ego doctrine as the basis for personal jurisdiction must be done reluctantly and

---

[4] Pyrotek does not argue, and the Court does not find, that Mr. Bollar's own personal activities were sufficient to support a finding of minimum contacts with the state of North Carolina.

11

cautiously). Thus, it must first be determined whether Pyrotek has stated a claim for veil-piercing which survives Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

When jurisdiction in a case is premised upon diversity of citizenship as it is here, a federal court applies the law of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020 (1941). In Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F.Supp 345 (M.D.N.C. 1995), this Court examined choice of law in this context and found that, given the opportunity, the North Carolina Supreme Court would apply the law of the state of incorporation to determine whether a defendant could pierce the corporate veil. Id. at 348-49; see also Richmond v. Indalex Inc., 308 F. Supp. 2d 648, 658 (M.D.N.C. 2004) (accepting the decision in Dassault as the law governing contract cases); DeWitt v. Hutchins, 309 F. Supp. 2d 743, 751 (M.D.N.C. 2004) (same). Here, Motionmaster was incorporated in the state of California so the California veil-piercing law will be applied.

At the motion to dismiss stage, the plaintiff is required only to make a *prima facie* showing of facts sufficient to pierce the corporate veil. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1984). Under California law, the *prima facie* case for veil-piercing is comprised of two elements: "(1) that there is such unity of interest and ownership that the separate personalities of the two corporations no longer exist, and (2) that failure to disregard the corporation would

12

result in fraud or injustice." RAE Systems, Inc. v. TSA Systems, Ltd., 2005 WL 1513124, at *3 (N.D. Cal. June 24, 2005) (citing, Watson v. Commonwealth Insurance Co., 63 P.2d 295, 298 (Cal. 1936)). Additionally, where the court looks to the pleadings, "conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss." RAE Systems, 2005 WL 1513124, at *3; see also Richmond, 308 F. Supp. 2d at 568 ("Plaintiff's bare allegations of control are insufficient to allow Plaintiff to pierce [corporate defendant's] corporate veil so as to extend derivative liability to [defendant].").

Pyrotek's Complaint alleges the following to support is veil-piercing claim:

> Defendant Motionmaster is a mere alter ego of Defendant Bollar. Defendant Bollar has complete and exclusive control of Defendant Motionmaster. Defendant Bollar has used Defendant Motionmaster as an instrument for his personal benefit and has used the Defendant Motionmaster in order to undertake improper actions that **benefited Defendant** Bollar and damaged the Plaintiff. In addition, the Plaintiff alleges and believes that Defendant Bollar has failed to follow corporate formalities with regard to Defendant Motionmaster. (Compl. ¶ 11.)

**Although all that is necessary to state** a claim under Rule 8 of the Federal Rules of Civil procedure is a "short and plain statement of the claim showing that the pleader is entitled to relief," Pyrotek has made no allegations to support the second element of the veil-piercing standard: that failure to disregard the corporation would result in fraud or injustice. Fed. R. Civ. P. 8. Pyrotek has not claimed that Motionmasters is undercapitalized or unable to pay a judgment if one is entered against it. C.f. RAE Systems, 2005 WL 1513124, at *4 (finding allegations of

13

alter ego liability sufficient when plaintiff alleged that defendant transferred all of its interest in order to evade its contractual obligations); Mieuli v. Debartolo, 2001 U.S. Dist. LEXIS 22518, at *1 (N.D. Cal. Jan. 16, 2001) (denying Rule 12(b)(6) motion to dismiss where plaintiff alleged a unity of interest and undercapitalization of the corporate entity).  Because no allegation was made that would, if true, state a claim for veil-piercing under California law, Defendants' motion to dismiss Pyrotek's veil-piercing claim will be granted.

Additionally, because jurisdiction over Mr. Bollar would exist only though piercing of the corporate veil, this Court does not have personal jurisdiction over Defendant Bollar.[5]

IV.

**Defendants have also moved that Pyrotek's unfair and deceptive trade practice claim be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).**  A complaint can be dismissed for failure to state a claim under Rule 12(b)(6) only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99

---

[5] Based on the forgoing discussion, discovery on jurisdictional issues as to Motionmaster is not necessary.  Additionally, discovery is not necessary regarding jurisdiction over Mr. Bollar because that depends only on whether a claim for veil-piercing has been properly stated in the complaint, which it has not.  Therefore, Pyrotek's Motion for Leave to Conduct Discovery on Jurisdictional Issues will be denied.

14

(1957); Old South Home Co. v. Keystone Realty Group, Inc., 233 F. Supp. 2d 734, 735 (M.D.N.C. 2002). **Specifically, Defendants contend that Pyrotek has failed to allege any aggravating circumstances to support its claim that Defendants engaged in unfair and deceptive trade practices.**

Section 75-1.1 provides that "unfair or deceptive acts or practices in or affecting commerce are declared unlawful." Id. A prevailing party under this statute must show: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) that proximately caused actual injury to the plaintiff. Gray v. N.C. Ins. Underwriting Assoc., 529 S.E.2d 676, 681 (N.C. 2000). Whether a particular act is an unfair or deceptive trade act under § 75-1.1, is for the court to determine as a matter of law. Id.

It is well-established under North Carolina law that a claim under § 75-1.1 must be based on more than mere breach of contract. See Broussard v. Meineke Discount Muffler Shops, Inc, 155 F.3d 331, 347 (4th Cir. 1998) ("[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.") (citing Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. 1992). In an effort to prevent Chapter 75 claims, which provide for treble damages, from attaching to every complaint for breach of contract, North Carolina law requires a showing of "substantial aggravating circumstances" to elevate a breach of contract to the level of an unfair or deceptive trade practice. Broussard, 155 F.3d at 347. A breach of contract

15

can constitute an unfair or deceptive trade practice if the promisor enters into the contract with no intent to perform under that contract. Id. (citing Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 903 (4th Cir. 1996) (applying North Carolina law)). However, courts "differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." Broussard, 155 F.3d at 347 (holding that given the contractual center of that dispute, plaintiffs' § 75-1.1 claims were out of place) (citing Hageman v. Twin City Chrysler-Plymouth Inc., 681 F.Supp 303, 306-07 (M.D.N.C. 1988)).

In this case, Pyrotek's claims against Defendants center around the contract between the parties for the manufacture, delivery and installation of the Equipment. In essence, Pyrotek claims that the Equipment does not comport with the terms contemplated by the parties in the purchase order. The Complaint sets forth no "substantial aggravating circumstances" beyond the claim that Defendants breached the terms of the contract. See Strum v. Exxon Co., 15 F.3d 327, 333 (4th Cir. 1994) ("We think it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations."). Additionally, Pyrotek fails to allege any actions or harm by Defendants that could not be fully redressed by its breach of contract claim.

16

See Broussard, 155 F.3d at 347 ("If [Defendant] has failed to fulfill its contractual obligations, the remedy is contract damages, not the blank check afforded to juries when they are authorized to return a punitive award.").  Thus, Pyrotek's injuries are better addressed by contract law and its unfair and deceptive trade practices claim under Chapter 75-1.1 will be dismissed.  See Gilbane, 80 F.3d at 903 ("A simple breach of contract is not unfair or deceptive, however, absent substantial aggravating circumstances."); Computer Decisions, Inc. v. Rouse Office Mgmt., Inc., 477 S.E.2d 262, 266 (N.C. Ct. App. 1996) (holding that defendant's actions did not violate Chapter 75 but instead constituted a "mere breach of contract").

V.

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction [Doc. #4] will be DENIED as to Motionmaster.  However, because Pyrotek has failed to state a claim sufficient to support piercing the corporate veil, Defendants' motion to dismiss for lack of personal jurisdiction [Doc. #4] will be GRANTED as to Mr. Bollar.  Thus, Plaintiff's Motion for Leave to Conduct Discovery on Jurisdictional Issues [Doc. #15] will be DENIED.

Additionally, because Pyrotek has failed to allege facts sufficient to support a claim of unfair and deceptive trade practices, Defendants' motion to dismiss Pyrotek's Chapter 75-1.1 claim [Doc. #4] will be GRANTED.

17

This the day of February 22, 2006

    /s/ N. Carlton Tilley, Jr.
United States District Judge